# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1447V
UNPUBLISHED

| | |
|---|---|
| ELAINE DIMEO,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Dated: October 5, 2021<br><br>Special Processing Unit (SPU); Six Month Residual Effects or Sequelae; Influenza Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Wei Kit Tai*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RULING ON ENTITLEMENT**[1]

    On September 19, 2019, Elaine Dimeo filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries caused by an influenza ("flu") vaccine on September 12, 2018. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

    Petitioner filed a motion for a ruling on the record that she has satisfied the requirements of Section 11(c)(1)(D)(i) of the Vaccine Act (ECF No. 34). For the reasons discussed below, I find that Petitioner suffered the residual effects of her alleged vaccine-

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

related injury for more than six months after vaccination, as required by the Vaccine Act. Further, I find that Petitioner is entitled to compensation for a left SIRVA.

### I.     Relevant Procedural History

On February 8, 2021, Respondent filed a status report stating that he had reviewed the records in this case and was willing to engage in settlement discussions. ECF No. 29. Respondent also requested a deadline be set for his Rule 4(c) Report. That report was filed on April 16, 2021, and argued that the records in this case did not demonstrate entitlement because Petitioner could not establish that her injury lasted for more than six months after her vaccination. ECF No. 32, Respondent's Rule 4(c) Report ("Report") at 1, 6-7. I subsequently ordered Petitioner to file a motion for a ruling on the record on April 23, 2021. ECF No. 33.

Petitioner filed her motion on May 25, 2021. ECF No. 34, Petitioner's Motion for a Ruling on the Record. Respondent filed an opposition on June 25, 2021. ECF No. 35, Respondent's Response to Petitioner's Motion for Ruling on the Record ("Response"). Petitioner did not file a reply. This issue is now ripe for adjudication.

### II.    Issue

At issue is whether the residual effects or complications of Petitioner's injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i).

### III.   Factual Summary

On September 12, 2018, Ms. Dimeo received a flu vaccine in her left shoulder. Ex. 1 at 6. The records filed in this case establish that prior to the vaccine Petitioner had left shoulder pain following a flu shot in 2017, but the issue resolved following a steroid injection received on October 19, 2017. Ex. 5 at 193-97; Ex. 2 at 18.

Three days after her vaccination, Petitioner presented to CaroMont Health Emergency Department complaining of left shoulder pain since a flu shot three days prior and was treated by Dr. Ayana Wilson. Ex. 2 at 17-18, 58, 132. Upon examination, Petitioner had a normal range of motion but reported tenderness in her left trapezius muscle. *Id.* at 18. Petitioner further noted that "she experienced similar symptoms last year when she received the flu shot and these symptoms only improved after she received a steroid shot." *Id.* at 39. Dr. Wilson noted that she believed muscle spasms may have contributed to her pain. *Id.* at 18. Petitioner received a steroid shot that day and was prescribed Flexeril and Motrin. *Id.* at 49-50.

Petitioner again complained of shoulder pain on September 17, 2018, and presented to Kathryn Suzanne Claffee, P.A., at East Ridge Family Medicine. Ex. 3 at 12-13. Petitioner exhibited tenderness in her left trapezius muscle, received refills of her medications, prednisone, and was told to follow up in one week. *Id.* at 13. Petitioner returned to East Ridge Family Medicine on September 24, 2018, complaining of shoulder pain and reduced range of motion. *Id.* at 64. Petitioner was prescribed a second round of prednisone and referred to an orthopedic specialist. *Id.* at 64.

Petitioner was seen by Jeffrey Dabkowski PA at OrthoCarolina on September 25, 2018. Ex. 4 at 21. Mr. Dabkowski noted that he was "concerned that there is a now bursitis like pattern to her shoulder" and that it may progress towards adhesive capsulitis. *Id.* at 22. Petitioner exhibited restricted range of motion but full strength upon examination. *Id.* at 21. X-rays revealed degenerative changes in the AC joint and large subacromial spurs. *Id.*

Petitioner reported to PA Dabkowski on October 11, 2018 that her pain had improved, but was still present. Ex. 4 at 18-20. She was diagnosed with bursitis and adhesive capsulitis, received a cortisone injection, and was referred to physical therapy. *Id.* at 18-19.

Petitioner returned to Eastridge Family Medicine with ongoing complaints of left shoulder pain on October 15, 2018. Ex. 3 at 90-91. She reported that, following a subacromial injection the week before, she had a great deal of improvement with pain control and range of motion, but still had pain and trouble with some movements. *Id.* at 91. Less than two weeks later, on October 26, 2018, Petitioner presented for an initial physical therapy evaluation, and attended three sessions through February 19, 2019. Ex. 4 at 24-29.

Petitioner returned to OrthoCarolina on January 3, 2019. Ex. 4 at 12-13. She reported continued left shoulder pain but also noted that her range of motion was greatly improved, although her strength had yet to return. *Id.* at 12. PA Dubkowski stated that her capsulitis was resolved at that point, but her rotator cuff was still very weak. *Id.*

Petitioner next saw PA Dabkowski on March 18, 2019. Ex. 4 at 9-10. Upon examination, Petitioner exhibited full strength and full range of motion. However, Petitioner stated that she still felt pain "if it is less than 30 degrees outside or if it is raining." She also felt that her shoulder was still weak. PA Dabkowski stated that the aching sensation "is likely a remnant of the inflammation" and "may bet better in time…." *Id.* at 10. Further, PA Dabkowski advised Petitioner to continue working to strengthen her shoulder. *Id.* Petitioner stated that she would continue doing at-home exercises. *Id.*

### IV.     Authority

The purpose of the Vaccine Act is to award "vaccine-injured persons quickly, easily, and with certainty and generosity." *Weddel v. Sec'y of Health & Human Servs.*, 100 F. 3d 929, 932 (Fed. Cir. 1996) (*quoting* H.R. Rep. No. 99-908, at 3 (1986)). The Act was meant to remedy the problem that "for the relatively few who are injured by vaccines – through no fault of their own – the opportunities for redress and restitution [were] limited, time consuming, expensive, and often unanswered." *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011) (en banc) (*quoting* H.R. Rep. No. 99-908, at 6 (1986)). As a result, the Program places some emphasis on speed and efficiency, especially in close cases.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of Petitioner's injury or illness that is contained in a medical record. § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Nevertheless, "[i]t must [also] be recognized that the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance. Since medical records typically record only a fraction of all that occurs, the fact that reference to an event is omitted from the medical records may not be very significant." *Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (Fed. Cl. 1991), aff'd, 968 F.2d 1226 (Fed. Cir. 1992); *see also Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (rejecting as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions).

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A).  "[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects").  In another SPU case, where a Petitioner's last treatment was five months and nine days after a vaccine, the petitioner was found to meet the six month requirement. *Schafer v. Sec'y of Health & Human Servs.,* No. 16-0593V, 2019 WL 5849524 (Fed. Cl. Spec. Mstr. Aug. 28,

4

2019). In that case, the special master noted that it was unlikely "that petitioner's shoulder symptoms would have resolved within 22 days." *Id*. at *7.

## V.     Finding of Fact

In this case, it is undisputed that Petitioner received a flu vaccine on September 12, 2018, in her left deltoid. The parties have not raised any dispute concerning the timing of onset of Petitioner's left shoulder pain, which the record establishes was immediate. Ex. 2 at 17-18.[3] This leaves only the issue of severity. In order for Petitioner to establish more than six months of residual effects, she must demonstrate that her residual symptoms continued until at least March 12, 2019.

The parties do not dispute that Petitioner was seen by PA Dabkowski at Ortho Carolina on March 18, 2019, approximately six months and one week after her vaccination and the onset of her symptoms. Ex. 4 at 9-11. At that time, she reported that her range of motion was back to normal, but that she still felt pain in certain situations, such as when it was cold or raining. *Id.* Further, Petitioner also stated that her shoulder was still weak, and that she "has a little bit of strength left to work on." *Id.* Additionally, PA Dabkowski noted that Petitioner had achieved significant results, but that the aching sensation she described was likely a remnant of the inflammation. *Id.* at 9-10.

Here I find that the severity requirement has been met in Petitioner's favor. While it is true that Petitioner appears to have recovered fairly quickly after her injury (when compared with some other Program cases), she still had some pain, discomfort, and weakness at certain times as of March 18, 2019. While this date just barely meets the six-month severity requirement, it still crosses the temporal line. Indeed, during Petitioner's last appointment with PA Dabkowski, he noted that her pain "may get a little bit better in time but also advised her that sometimes the symptoms can stay…." Ex. 4 at 9. Further, he advised Petitioner to "continue working on her strengthening." *Id.* Thus, contemporary treater comments also underscore the degree to which Petitioner's symptoms were not believed to have disappeared at the time (even if they did not long thereafter).

## VI.     Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner suffered the residual effects of her vaccine-related injury for at least six months.

---

[3] Respondent concedes that Petitioner's alleged injury is consistent with a SIRVA, and only contends that Petitioner "has not established that her injury lasted for more than six months after vaccination…." Response at 1.

Since Respondent challenges no other elements of Petitioner's claim, and I find they are also met,[4] on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

                                        **s/ Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[4] The other elements of Petitioner's SIRVA claim include that her pain began within 48 hours of her vaccination, that she had no history of pain, inflammation, or dysfunction of the affected shoulder prior to her vaccination and that no other condition or abnormality is present that would explain Petitioner's symptoms. C.F.R. § 100.3(c)(10)(i) and (iv). Respondent also does not dispute that the vaccination was administered within the United States, and that there has been no prior award or settlement of a civil action for damages on his behalf as a result of his condition.

Since Respondent challenges no other elements of Petitioner's claim, and I find they are also met,[4] on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

                                        **s/ Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[4] The other elements of Petitioner's SIRVA claim include that her pain began within 48 hours of her vaccination, that she had no history of pain, inflammation, or dysfunction of the affected shoulder prior to her vaccination and that no other condition or abnormality is present that would explain Petitioner's symptoms. C.F.R. § 100.3(c)(10)(i) and (iv). Respondent also does not dispute that the vaccination was administered within the United States, and that there has been no prior award or settlement of a civil action for damages on his behalf as a result of his condition.